Kenman G. LAY, d/b/a Retail
Development Group,
Plaintiff–Appellee,

v.

FAIRFIELD DEVELOPMENT, a Tennes-
see General Partnership, Margot Ever-
hart, Partner, Ann M. Stafford, Partner,
and Max Everhart, individually, Defen-
dants–Appellants.

Court of Appeals of Tennessee,
Eastern Section.

March 19, 1996.

Permission to Appeal Denied by
Supreme Court Sept. 9, 1996.

Randy Sellers, Cleveland, for Appellants.

D. Mitchell Bryant, Jenne, Scott & Bryant,
Cleveland, for Appellee.

## OPINION

McMURRAY, Judge.

This is an action to collect a real estate
commission. The trial court resolved the
issues in favor of the plaintiff and the defen-
dants appealed. We reverse the judgment of
the trial court and dismiss the case.[1]

The only issue raised by the appellants
challenges the propriety of the trial court's
judgment in favor of the plaintiff under the
facts and circumstances of this case. Simply
stated, the issue is whether or not the evi-
dence preponderates against the findings of
the trial court.

■ As we have often stated, our review
of a non-jury case is *de novo* upon the record
of the trial court, accompanied by a presump-
tion of the correctness of its findings, unless
the preponderance of the evidence is other-
wise. Tennessee Rules of Appellate Proce-
dure, Rule 13(d). No presumption attaches
to the trial court's conclusions of law. In a
*de novo* review, the parties are entitled to a
reexamination of the whole matter of law and
fact and this court should render the judg-
ment warranted by the law and evidence.
*Thornburg v. Chase*, 606 S.W.2d 672, 675

---

1. For convenience, we will refer to the parties as
they appeared in the trial court, i.e., plaintiff and
defendants.

(Tenn.App.1980); *American Buildings Co. v. White,* 640 S.W.2d 569, 576 (Tenn.App.1982); Tennessee Rules of Appellate Procedure, Rule 36.

Few material facts are in dispute. The record reflects that the defendants, at all times material, were the owners of a rather large tract of commercial land in the City of Cleveland. The defendants sought to develop their property by means of construction of a strip mall within which specific properties would be leased to tenants. The defendants employed the plaintiff, by written agreement, to attempt to procure prospective tenants and to develop the property. The agreement was for an initial period of ninety (90) days, however, the parties continued to operate under the terms set out in the agreement for a period of approximately three years. Under the terms of the agreement, the plaintiff was to receive a commission based on square footage of property leased by tenants procured by him. In addition to the commission for the leases, the defendants were to pay the plaintiff's expenses. There is no dispute concerning the expenses. It is important to note that the written agreement between the parties and their continued relationship concerned *leased properties* only. There was no written agreement concerning a sale of property, nor is there any evidence that a sale was contemplated by the parties at the time the agreement was entered into.

In the plaintiff's complaint, he sought as an element of his damages, the commissions that would have been due on three prospective tenants which he found for the defendants provided the leases had borne fruit. At the trial, the claim for these commissions was summarily dismissed. There is no appeal from this decision of the court. The parties' written agreement and extension thereof by implication has no further bearing on the issues before the court.

The plaintiff's present claim is for a commission to which he claims he is entitled by virtue of an oral agreement between himself and the defendants. The defendants deny that there was ever an agreement between themselves and the plaintiff whereby he was to receive a commission for a sale of property.

The facts of the case are relatively simple. The plaintiff claims that he learned that Wal–Mart wanted to relocate its store in Cleveland.[2] He contacted an agent of Wal–Mart and arranged a meeting of the various interested parties. It was at this meeting that the parties surprisingly learned that Wal–Mart was not interested in leasing property but was interested in purchasing property for a new store. The plaintiff claims that the defendant, Everhart, at this meeting, orally agreed to pay him a three percent (3%) commission if the sale was consummated. The defendants deny that there was an agreement to pay the plaintiff a commission on the sale.

The defendant, Max Everhart, as agent for the other defendants, had no authority to sell the real estate of his principals, therefore, it was necessary to defer a decision on the sale until he could confer with the true property owners. After consultation, Mr. Everhart was authorized to sell the property to Wal–Mart.

Subsequently, Wal–Mart proposed to enter into an option agreement, whereby, *inter alia,* Wal–Mart would have an option to purchase the property for a period of six months. Wal–Mart paid $10,000.00 for the option. The original proposed option agreement also contained a provision that the plaintiff was to receive a commission of three percent (3%) of the sales price. The defendants found the option agreement to be unacceptable. Subsequently, a new option agreement was entered into between the defendants and Wal–Mart. The new option agreement changed some of the terms of the option agreement among which was the omission of the commission for the plaintiff. At this point the business relationship between the plaintiff and the defendants ended.

The option agreement between the defendants and Wal–Mart was not exercised during the six month period, however, the option

2. It is disputed as to which of the parties first learned that Wal–Mart was interested in relocating its Cleveland store. For the purposes of this appeal, however, we find this dispute to be of no significance.

agreement was amended to grant to Wal-Mart the right to extend the period of the option upon payment of additional sums. Wal-Mart did exercise its right to extend the option through April 1, 1992, and paid the defendants an additional $5,000.00 for a total of $15,000.00 in option money. Wal-Mart found the property to be unacceptable and elected not to exercise its option which, therefore, expired by its own terms.

Some fifteen (15) months later, the defendants executed a warranty deed to Wal-Mart for a tract of land adjoining and slightly overlapping the property which was the subject of the option. The property was sold to Wal-Mart for a purchase price of $1,774,000.00. It is on this amount that the plaintiff claims a commission.

■ Simply stated, the only issue before us and that before the trial court was whether an enforceable oral contract existed between the plaintiff and the defendants whereby the defendants would pay a three percent (3%) commission to the plaintiff if *any* of the defendants' property was sold to Wal-Mart. The chancellor, in his decision announced from the bench, made no specific finding that a contract existed. In resolving the issue in favor of the plaintiff, the trial court either implicitly found that such a contract existed or awarded damages to the plaintiff on an equitable basis. From his findings, we are unable to make that determination.

Specifically, the chancellor found:

\* \* \* \* \* \*

It's stated that the original agreement was for leasing purposes, and I think that's exactly right, but when Wal-Mart came into the picture and it became obvious that they were interested in buying and not leasing that did not seem to me to terminate the association between Mr. Lay [the plaintiff] and Mr. Everhart [one of the defendants]. It was negotiated and remained in negotiation till there was a little bit of dispute over the Duff property, and then when the contract was submitted to Mr. Everhart he said that he did not feel that the three percent brokerage fee

should be in there.[3] Mr. Everhart stated that they had never reached any kind of agreement on brokerage fee and Mr. Lay says that they had.

... [I]t is not disputed that Mr. Lay is the one that contacted them [Wal-Mart], brought them onto the scene, and was conducting the negotiations and continued to do so up until his services were terminated at the time the proposal was offered to Mr. Everhart. And at that time, Mr. Everhart chose to discharge Mr. Lay from further activities in the matter.

... I think there is validity to this case. And I don't think that it matters that the specific property being discussed involved at the time of the original agreement with—or discussion with Wal-Mart was later transferred over to the present location of Wal-Mart. I don't think that's important to this case. I think the fact is that Mr. Everhart had exactly the same thing in the way of ownership at that time that Mr. Everhart's (sic) services were terminated as he did when he later contacted Mr. Henderson seven months later, or whenever it was. The court's going to give judgment in this matter for the brokerage fee of three percent.

■ In any event, we believe that the trial judge was in error in awarding a brokerage fee. Without question, a broker and a property owner may enter into an oral listing agreement where, upon sale, the broker is entitled to collect his contract fee. The existence and terms of the agreement must be established, however, by clear, cogent and convincing evidence.

An oral brokerage contract for the sale of real estate is enforceable in Tennessee. Statements made between the seller and broker are characterized as a contract if the proof is clear, cogent and convincing. *Alexander v. C.C. Powell Realty Co.[,] Inc.,* 535 S.W.2d 154 (Tenn.App.1975).

*Parks v. Morris* an unreported case from this court, opinion filed August 30, 1995.

In *Alexander,* cited above, we find the following statement:

Mart and in which the plaintiff owned an interest.

---

**3.** The "Duff property" is a tract of land which adjoined the land originally optioned to Wal-

Defendant correctly contends that in this state a real estate broker may not recover under an oral brokerage contract unless he can establish its essential terms by clear, cogent and convincing evidence. *Alexander* at 157.

We are of the opinion that the plaintiff failed to prove by clear, cogent and convincing evidence either the existence of a contract or the terms thereof.

Firstly, we note that the only testimony offered by the plaintiff concerning the existence of a listing contract and commission was as follows:

Q. All right. Did you at that meeting or after that meeting have any discussions with Mr. Everhart regarding a possible commission *if a sale took place on this property.* (Emphasis added).

A. At that meeting I mentioned to him that I would need a commission *on this sale.* (Emphasis added).

Q. Tell the court as best you can recall the nature of the conversation about a possible commission.

A. He said, "how much"? And I said, "well, six percent." And he said, "that's too much." I said, "well he's [Wal–Mart's agent] getting three percent, just make mine three percent."

It is important to note that the plaintiff did not testify that the defendant accepted his offer. The only other and further testimony by the plaintiff relating to commission is as follows:

Q. . . . Under the terms of this option agreement [the original proposed agreement], under the closing costs section to be paid by seller brokerage, real estate broker's commission of three percent of the purchase price to Ken Lay Real Estate. Is that right?

A. That's right.

Q. Did you present or take this option to purchase agreement to Mr. Everhart?

A. I did.

Q. And tell me, if you would, what was Mr. Everhart's reaction at that point in time regarding this option agreement?

A. After review he said, "I can't sign this. What's this commission doing in here?" And I said, "We discussed that." He said, "Well I'm not paying it."

The record does not disclose any corroboration of the plaintiffs testimony whatever.

The defendant, Mr. Everhart, testified as follows:

Q. Mr. Lay says that specifically at that meeting [where it was learned by the parties that Wal–Mart wanted to buy] Mr. Lay discussed with you you (sic) paying him a commission should you ultimately decide to sell.

A. The first notice I had that Mr. Lay wanted a commission was when it showed up in the option document.

Q. All right. So—

A. He never said a word about a commission at all.

*COURT:* Well, when you called him and asked him, didn't you anticipate that he'd be wanting some kind of remuneration?

*WITNESS:* I did. And I would gladly have remunerated him for a lease, but our agreement had no concept of a sale.

Secondly, we note that the plaintiff's testimony speaks in terms of **this property.** Further, it has not been demonstrated by clear, cogent and convincing evidence, or otherwise, that the parties had a meeting of the minds. Reserving any benefit of doubt unto the plaintiff, however, it is clear that, even if there were a contract, the contract contemplated only that tract of land upon which an option was taken. It cannot be expanded to include all the property of the defendants, adjoining or not.

Thirdly, there has been no showing by the plaintiff of the terms of the alleged contract other than the three percent (3%) commission to which he claims to be entitled. Assuming *arguendo* that the plaintiff had, in fact, reached an agreement with the defendant for a three percent (3%) commission, there is no evidence in the record to establish the time period during which he would be entitled to a commission, duration of the contract or evidence relating to the sale of other property. If the property finally bought from the defendants by Wal–Mart had been the same property described in the

option, perhaps we could be more sympathetic with the plaintiff's position.[4]

We find, however, that the proof of the Plaintiffs, even though accepted as true, is too indefinite to create an enforceable contract as a matter of law. It is well established in this jurisdiction that a contract can be expressed, implied, written, or oral, but an enforceable contract must, among other elements, result from a meeting of the minds and must be sufficiently definite to be enforced. *Johnson v. Central National Ins. Co. of Omaha, Neb.*, 210 Tenn. 24, 356 S.W.2d 277, 281 (1962); *Price v. Mercury Supply Co., Inc.*, 682 S.W.2d 924 (Tenn.App.1984). The contemplated mutual assent and meeting of the minds cannot be accomplished by the unilateral action of one party, nor can it be accomplished by an ambiguous course of dealing between the two parties from which differing inferences regarding continuation or modification of the original contract might reasonably be drawn. *Batson v. Pleasant View Utility Dist.*, 592 S.W.2d 578, 582 (Tenn. App.1979); *Balderacchi v. Ruth*, 36 Tenn. App. 421, 256 S.W.2d 390 (Tenn.App.1953). In addition, a mere expression of intent or a general willingness to do something does not amount to an "offer." *Talley v. Curtis*, 23 Tenn.App. 181, 129 S.W.2d 1099 (1939). *Jamestowne on Signal, Inc. v. First Fed. S & L*, 807 S.W.2d 559, 564 (Tenn.App.1990).

We are of the opinion that the above authorities are controlling when applied to the facts in this case. We find that the plaintiff failed to carry his burden of proof and must fail.

We reverse the judgment of the trial court and dismiss the action. Costs are taxed to the appellee and this case is remanded to the trial court for the collection of costs and entry of a judgment consistent with this opinion.

GODDARD, P.J., and SUSANO, J., concur.

---

**4.** While it is acknowledged that there is some overlapping of the properties, it is minimal and no case is made for a commission on that small parcel of land.