# IN THE COURT OF APPEALS OF TENNESSEE,
## AT NASHVILLE

**FILED**

**March 23, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

|  |  |  |
|---|---|---|
| | ) | |
| **RALPH W. SIMONTON, JR.**, | ) | Sumner County Circuit Court |
| | ) | No. 17692-C |
| Plaintiff/Counter-Defendant/Appellant, | ) | |
| | ) | |
| VS. | ) | C. A. No. M1998-00493-COA-R3-CV |
| | ) | |
| **TOM HUFF**, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff/Appellee. | ) | |
| | ) | |

From the Circuit Court of Sumner County at Gallatin.
**Honorable Thomas Goodall, Judge**

**John R. Bradley**, Portland, Tennessee
Attorney for Plaintiff/Counter-Defendant/Appellant

**Walter H. Stubbs**, Gallatin, Tennessee
Attorney for Defendant/Counter-Plaintiff/Appellee

OPINION FILED:

**AFFIRMED AS MODIFIED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**KOCH, J.**: (Concurs)

In this action for breach of contract, Plaintiff Ralph W. Simonton, Jr. appeals from an order of the trial court awarding Defendant Tom Huff a total of $3,000.00 in damages and $1,000.00 in attorney's fees. For the reasons set forth below, we modify the amount of damages awarded to Mr. Huff and remand the cause for a determination by the trial court regarding the amount of attorney's fees incurred by Mr. Huff on appeal.

In late 1995, Mr. Simonton approached Mr. Huff and asked Mr. Huff whether he would be interested in farming a portion of his property located in Sumner County, Tennessee. Mr. Huff told Mr. Simonton that, in order to make a sufficient amount of land available for crops, it would be necessary to have some bulldozer work done on the property. Mr. Simonton agreed to allow the bulldozer work to be performed, but at Mr. Huff's expense. Mr. Huff then hired Mike Webster, whose employee performed approximately thirty-five hours of bulldozing work on Mr. Simonton's property at $85.00 per hour. In December of 1995, the parties negotiated and executed a written lease agreement. This agreement provides, in its entirety, as follows:

## LEASE AGREEMENT

THIS AGREEMENT is made and entered into by and between **RALPH W. SIMONTON, Jr.** (hereinafter "**Landlord**"), and **TOM HUFF** (hereinafter "**Tenant**").

### W I T N E S S E T H :

1. **PREMISES AND USE**

**Landlord** leases to **Tenant** thirty-five (35) acres, more or less, on Butler Bridge Road, Portland, Tennessee, in the 14th Civil District, Sumner County, Tennessee, property being leased on a yearly basis, for seven (7) years, beginning January 1, 1996, to be continuously used during this lease for no other purpose than farming, unless otherwise approved by **Landlord**.

2. **RENTAL**

As consideration for this lease, **Tenant** promises to pay **Landlord** in lawful money of the United States a rental of One Thousand Dollars ($1,000.00) yearly, due and payable upon the first day of January 1, 1996, and upon the first (1st) day of each and every year thereafter, for seven years, at which time this Lease is terminated. In addition to the rent, **Tenant** shall pay the sum of One Hundred Dollars ($100.00) toward land taxes each year, with payment to be made at time of rent. **Tenant** agrees to pay **Landlord** a late charge penalty of two [percent] (2 %) of the amount of rent due in the event that any rent payment is made more than ten (10) days past the due date.

3. **USE AND CARE OF PREMISES**

**Tenant** will not use the premises or any part thereof, for any purpose other than that specified above. Further, **Tenant** will not permit any signs or advertisements to be displayed, inscribed upon or affixed on any part of the property and shall not allow junky or abandoned vehicles of any kind to be maintained or kept on the property.

### 4. ASSIGNMENT AND SUBLETTING

**Tenant** will not sell, assign, mortgage, or transfer this lease agreement, sublet the demised premises or any part thereof, or allow any transfer hereof, or any lien upon **Tenant's** interest by operation of law, without the prior written consent of **Landlord.**

### 5. MECHANICS' OR MATERIALMEN'S LIENS

**Tenant** shall not permit any mechanics' liens or materialmen's liens to be filed against the real property.

### 6. LIABILITY

**Tenant**, as a material part of the consideration to **Landlord**, hereby assumes all risk of damage from any source to property belonging to it or under its control, the use of any machinery used about the property, and **Tenant** hereby waives all claims in respect thereof against **Landlord** and agrees to defend and hold harmless **Landlord** from and against any such claims by others.

### 7. ATTORNEY'S FEES

In the event either party breaches this agreement, the non-breaching party shall be entitled to recover reasonable attorney's fees and costs incurred as a result of the breach.

IN WITNESS WHEREOF, this instrument has been duly executed by the parties hereto on this the _____ day of December, 1995

**LANDLORD:**

/s/RALPH W. SIMONTON, Jr.

_____

**RALPH W. SIMONTON, Jr.**

**TENANT:**

/s/TOM HUFF

_____

**TOM HUFF**

Sometime near the execution of the lease, Mr. Simonton questioned Mr. Huff regarding who he used to raise his tobacco base. Mr. Huff responded that Jerry Hardin raised his tobacco base. Mr. Simonton then asked Mr. Huff to arrange for Mr. Hardin to also raise his tobacco base. Thereafter in May of 1996, Mr. Simonton signed a power of attorney giving Mr. Huff authority over Mr. Simonton's entire farming operation, including his tobacco base. Exercising the power of

attorney, Mr. Huff assigned Mr. Simonton's 1996 tobacco base to Mr. Hardin for $400.00.

The dispute between the parties began when, in early 1997, Mr. Simonton inquired of Mr. Huff regarding when he would receive his money for the 1996 tobacco crop. Mr. Huff then expressed his belief that the tobacco base was included in the parties' lease agreement and stated that he intended to keep the tobacco money. During a meeting held at the office of Mr. Simonton's attorney in May of 1997, Mr. Simonton informed Mr. Huff that he had not intended for the tobacco base to be included in the lease agreement and stated that if Mr. Huff did not give him the tobacco money, the lease would be terminated. Mr. Huff then expressed his belief that the power of attorney authorized him to assign Mr. Simonton's tobacco base and stated to Mr. Simonton that, in making improvements to Mr. Simonton's property, he had relied on the money received as a result of the assignment of the tobacco base. He further stated that he would agree to the termination of the lease if Mr. Simonton would reimburse him for the bulldozing work performed on the property. Mr. Simonton refused. In July of 1997, Mr. Huff advised Mr. Simonton that he had assigned the 1997 tobacco base to Mr. Hardin and supplied Mr. Simonton with a copy of the power of attorney that he had previously signed. Mr. Simonton then advised Mr. Huff that he had terminated the parties' lease and immediately revoked the power of attorney. Mr. Huff continued to farm Mr. Simonton's property through 1997,[1] but did not farm the property or pay rent in 1998.

On December 3, 1997, Mr. Huff filed a civil summons against Mr. Simonton in the Sumner County General Sessions Court. Thereafter on December 17, 1997, Mr. Simonton filed a complaint against Mr. Huff in the Sumner County Circuit Court. The general sessions court subsequently removed Mr. Huff's action to the circuit court to be consolidated with Mr. Simonton's action. The trial court heard the matter on June 23, 1998. At the conclusion of the proof, the court announced that the parties' lease would be terminated as of January 1, 1998. The trial court then instructed each attorney to prepare a proposed order to be submitted to the court, but not to opposing counsel. On July 6, 1998, the trial court entered an order adopting the proposed order of counsel for Mr. Huff, which terminated the parties' lease agreement and granted a judgment to Mr. Huff in the

---

[1]In 1997, Mr. Huff grossed approximately $4,000.00 from the corn crop that he raised on Mr. Simonton's property. His expenses in 1997 incurred in connection with this crop totaled approximately $2,400.00. Thus, after paying $1,100.00 in rent to Mr. Simonton, Mr. Huff's net profits in 1997 totaled approximately $500.00.

amount of $3,000.00 plus costs. Additionally, the court granted to Mr. Huff attorney's fees in the amount of $1,000.00.[2] Mr. Simonton filed a motion to alter or amend the judgment, or in the alternative, for a new trial. The trial court denied the motion. This appeal followed.

The sole issue to be determined on appeal, as stated by Mr. Simonton, is whether, given the terms of the parties' lease agreement, the trial court erred in awarding damages and attorney's fees to Mr. Huff. There is nothing in the record indicating that the trial court made specific findings of fact in the case at bar. Additionally, the construction of a contract requires a legal rather than a factual conclusion. *See, e.g., Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 5-6 (Tenn. Ct. App. 1998)(citing *Rapp Constr. Co. v. Jay Realty Co.*, 809 S.W.2d 490, 491 (Tenn. Ct. App.1991); *Taylor v. Universal Tire, Inc.*, 672 S.W.2d 775, 777 (Tenn. Ct. App. 1984)). Thus, our review of the trial court's ruling is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

The cardinal rule of contract interpretation is that the court must attempt to ascertain and give effect to the intention of the parties. *See Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995); *Breeding v. Shackelford*, 888 S.W.2d 770, 775 (Tenn. Ct. App. 1994); *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. Ct. App. 1992); *Park Place Ctr. Enters., Inc. v. Park Place Mall Assocs., L.P.*, 836 S.W.2d 113, 116 (Tenn. Ct. App. 1992). In attempting to ascertain the intention of the parties, the court must examine the language of the contract, giving each word its usual, natural, and ordinary meaning. *See Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996); *Rainey*, 836 S.W.2d at 119. Additionally, the court may consider the situation of the parties, the business to which the contract relates, the subject matter of the contract, the circumstances surrounding the transaction, and the construction placed on the contract by the parties in carrying out is terms. *See Penske Truck Leasing Co. v. Huddleston*, 795 S.W.2d 669, 671 (Tenn. 1990); *New Life Corp. v. Thomas Nelson, Inc.*, 932 S.W.2d 921, 925 (Tenn. Ct. App. 1996); *Minor v. Minor*, 863 S.W.2d 51, 54 (Tenn. Ct. App. 1993). When the language of the contract is

---

[2]Mr. Huff testified at trial that he had incurred approximately $1,000.00 in attorney's fees as a result of the litigation between the parties.

plain and unambiguous,[3] the court must determine the parties' intention from the four corners of contract, interpreting and enforcing it as written. *See Koella v. McHargue*, 976 S.W.2d 658, 661 (Tenn. Ct. App. 1998); *Gates, Duncan & Vancamp Co. v. Levatino*, 962 S.W.2d 21, 25 (Tenn. Ct. App. 1997); *Bokor v. Holder*, 722 S.W.2d 676, 679 (Tenn. Ct. App. 1986).

In the instant case, we must first determine whether Mr. Simonton's tobacco base was included in the parties' written agreement. In order for an enforceable contract to exist, there must be a "meeting of the minds" between the parties with respect to the essential terms of the agreement. *See Sweeten v. Trade Envelopes, Inc.*, 938 S.W.2d 383, 386 (Tenn. 1996); *Higgins v. Oil, Chemical and Atomic Workers Int'l Union, Local 3-677*, 811 S.W.2d 875, 879 (Tenn. 1991); *Lay v. Fairfield Dev.*, 929 S.W.2d 352, 356 (Tenn. Ct. App. 1996); *Loeffler v. Kjellgren*, 884 S.W.2d 463, 468 (Tenn. Ct. App. 1994). Thus, in order for Mr. Simonton's tobacco base to be included in the parties' lease agreement, both parties must have had a "meeting of the minds" regarding the inclusion of the tobacco base. Mr. Simonton testified that when he asked Mr. Huff to arrange for Mr. Hardin to raise his tobacco crop, he believed that he, Mr. Simonton, would receive the resulting proceeds. Additionally, according to Mr. Simonton, when he granted a power of attorney to Mr. Huff, he did not realize that Mr. Huff intended to retain the income received from the assignment of the tobacco crop. Mr. Huff, on the other hand, testified that he believed that Mr. Simonton intended to include the tobacco base as part of the farm deal and that he, Mr. Huff, would then assign the tobacco base to Mr. Hardin. We note, however, that regardless of the intentions of Mr. Simonton and Mr. Huff when they entered into the lease agreement, if the intention of one party was not communicated to the other party, then it is without binding effect. *See Kozy v. Werle*, 902 S.W.2d 404, 411 (Tenn. Ct. App. 1995). Accordingly, when interpreting the parties' lease agreement, we do not attempt to ascertain the parties' state of mind at the time of its execution, but instead must seek to ascertain the parties' intention as embodied and expressed in the contract as written. *See*

---

[3]A contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions. *See Warren v. Metropolitan Gov't of Nashville and Davidson County*, 955 S.W.2d 618, 623 (Tenn. Ct. App. 1997); *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994). Rather, a contract is ambiguous only if its meaning is uncertain and is susceptible to more than one reasonable interpretation. *See Bonastia v. Berman Bros.*, 914 F. Supp. 1533, 1537 (W.D. Tenn. 1995); *Warren*, 955 S.W.2d at 623; *Frank Rudy Heirs Assocs. v. Moore & Assocs., Inc.*, 919 S.W.2d 609, 613 (Tenn. Ct. App. 1995); *Gredig v. Tennessee Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994).

*Burks v. Belz-Wilson Properties*, 958 S.W.2d 773, 777 (Tenn. Ct. App. 1997); *Bill Walker & Assocs., Inc. v. Parrish*, 770 S.W.2d 764, 770 (Tenn. Ct. App. 1989).

The parties' written lease agreement states that "**Landlord** leases to **Tenant** thirty-five (35) acres . . . to be continuously used during this lease for no other purpose than farming, unless otherwise approved by **Landlord**." Throughout the agreement, the subject matter of the lease is referred to as "the premises," "the demised premises," and "the real property." The agreement also prohibits Mr. Huff from allowing signs or advertisements to be displayed or junky or abandoned vehicles to be maintained on the property. Finally, under the terms of the agreement, Mr. Huff assumes all risk of liability for damage resulting from the use of machinery on or about the property. Thus, the language of the agreement clearly and unambiguously indicates that the lease applies to Mr. Simonton's real property. The agreement is silent, however, regarding Mr. Simonton's tobacco base, which is intangible personal property. Nor is there any language in the parties' lease agreement that could reasonably be construed to refer to any other item of personal property. Under Tennessee law, it is presumed that a written contract contains the entire agreement between the parties. *See Pyramid Operating Auth., Inc. v. City of Memphis (In re Pyramid Operating Auth.)*, 144 B.R. 795, 812 (Bankr. W.D. Tenn. 1992)(citing *Weeks v. Dealers' Implement Co.*, 65 S.W.2d 585, 586 (Tenn. Ct. App. 1933)). Given this presumption and the absence of any language in the parties' lease agreement indicating that it applies to Mr. Simonton's tobacco base, we do not think that there was a "meeting of the minds" between the parties with respect to the tobacco base. Accordingly, we conclude that Mr. Simonton's tobacco base was not included in the parties' lease agreement. In light of this conclusion, Mr. Huff is not entitled to retain the money paid to him by Mr. Hardin. In the brief that Mr. Simonton submitted to this Court, he requests an award of $400.00 for the money that Mr. Huff received as a result of his assignment of the 1997 tobacco base to Mr. Hardin. We agree that Mr. Simonton is entitled to such reimbursement.

We next consider whether there was a breach of the parties' lease agreement. Mr. Simonton alleges that Mr. Huff breached the agreement by failing to obtain written consent prior to assigning the tobacco base to Mr. Hardin. The parties' lease agreement provides that "**Tenant** will not sell, assign, mortgage, or transfer this lease agreement, sublet the demised premises or any part

thereof, or allow any transfer hereof, or any lien upon **Tenant's** interest by operation of law, without the prior written consent of **Landlord**." As stated above, however, the subject of the parties' lease agreement was Mr. Simonton's real property, not intangible personal property such as his tobacco base. Although Mr. Huff assigned Mr. Simonton's tobacco base, he did not sell, assign, mortgage, transfer, sublet, allow transfer of, or allow a lien to be placed upon Mr. Simonton's real property. Thus, we do not think that Mr. Huff breached the parties' agreement by assigning Mr. Simonton's tobacco base to Mr. Hardin.[4] Mr. Simonton also contends that Mr. Huff breached the agreement by failing to farm or pay rent for the use of Mr. Simonton's real property in 1998. In 1997, however, Mr. Simonton advised Mr. Huff that the parties' lease agreement was terminated. This renunciation on the part of Mr. Simonton relieved Mr. Huff of his duty to perform under the contract. Thus, we do not think that Mr. Huff was required to continue to farm the property or to pay rent to Mr. Simonton in 1998.

Mr. Huff first alleges that Mr. Simonton breached the parties' lease agreement by revoking the power of attorney that he had previously granted to Mr. Huff. Because there is nothing in the parties' agreement requiring Mr. Simonton to execute a power of attorney in favor of Mr. Huff, we find that Mr. Simonton's revocation of the power of attorney was not a breach of the agreement. Mr. Huff also contends that Mr. Simonton breached the agreement by renouncing it prior to the expiration of its seven year term. We agree. Under Tennessee law, a cause of action for breach of contract arises when one of the contracting parties, by his or her words and actions, demonstrates a total and unqualified refusal to perform under the contract. *See Kentucky Home Mut. Life Ins. Co. v. Rogers*, 270 S.W.2d 188, 194 (Tenn. 1954); *Wilkins v. Third Nat'l Bank*, 884 S.W.2d 758, 761 (Tenn. Ct. App. 1994); *Wright v. Wright*, 832 S.W.2d 542, 545 (Tenn. Ct. App. 1991). In announcing to Mr. Huff that he had terminated the parties' lease, Mr. Simonton evinced an intention to no longer be bound by the contract and demonstrated to Mr. Huff that he was unwilling to perform his future obligations under the contract. We think this repudiation of the contract amounts to a breach of the parties' lease agreement.

---

[4]Assuming, *arguendo*, that Mr. Simonton's tobacco base was included in the parties' agreement, we would still find that Mr. Huff did not breach the agreement by assigning the tobacco base to Mr. Hardin. Mr. Simonton granted a power of attorney to Mr. Huff giving him the authority to enter into contracts regarding Mr. Simonton's tobacco base. This power of attorney would have been sufficient to satisfy the "written consent" requirement of the parties' lease agreement.

Having determined that Mr. Simonton breached the parties' agreement, we must now consider whether the trial court erred in the amount of damages that it awarded to Mr. Huff. It is well settled that the purpose of awarding damages in an action for breach of contract is to place the non-breaching party in the same position that he or she would have been in if the contract had been fully performed. *See Lamons v. Chamberlain*, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1993); *Hennessee v. Wood Group Enters., Inc.*, 816 S.W.2d 35, 37 (Tenn. Ct. App. 1991); *Wilhite v. Brownsville Concrete Co.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990). In *Lamons v. Chamberlain*, 909 S.W.2d 795 (Tenn. Ct. App. 1993), the parties entered into a contract for the sale of the Chamberlains' video rental business to Ms. Lamons. *See id.* at 796. A dispute subsequently arose between the parties regarding which party was obligated to pay real estate taxes on the building in which the business was operated. *See id.* at 797. When Ms. Lamons did not pay these taxes, the Chamberlains notified her that she was in default of their agreement, ordered her to vacate the premises, and subsequently reclaimed possession of the business. *See id.* at 798. The trial court found, and this Court agreed, that the Chamberlains' actions constituted a breach of the parties' agreement. *See id.* at 800. With respect to the damages to which Ms. Lamons was entitled, this Court held as follows:

> In the instant case, [Ms. Lamons] purchased a business operation which at least was initially limited in duration by the terms of the lease agreement for the business premises. The proper measure of damages in this case is to put [Ms. Lamons] in the position [she] would have been in had the breach not occurred, and that is the continuation of the business for the duration of time allowed under the lease agreement. In essence, [Ms. Lamons] would be entitled to the net profit she would have realized over the time period involved. To determine the net profit over this period, if any, [Ms. Lamon's] initial investment and other expenses required for the maintenance of the business must of course be deducted from the gross receipts.
> . . . .
>
> Further proceedings should be held to determine [Ms. Lamons'] lost net profits for the time remaining under the lease which from the record before us appears to be September 1, 1992. Profits should be reduced by the overhead as well as all sums paid for the purchase of the business.

*Id.* at 801-02.

Applying the holding of *Lamons* to the facts of the case at bar, we find that Mr. Huff

is entitled to damages equal to the net profits that he would have received if Mr. Simonton had not breached the parties' lease agreement.[5] In 1997, Mr. Huff grossed approximately $4,000.00 from the corn crop that he raised on Mr. Simonton's property. The expenses incurred by Mr. Huff in connection with his 1997 corn crop totaled approximately $2,400.00.[6] Additionally, as required by the parties' lease agreement, Mr. Huff paid rent to Mr. Simonton for the year 1997 in the amount of $1,100.00. Thus, the net profit received by Mr. Huff for the crop was approximately $500.00. The term of the parties' lease agreement is seven years. For the first two years of the agreement, 1996 and 1997, Mr. Huff profited from his use of Mr. Simonton's property. As a result of Mr. Simonton's breach, however, Mr. Huff has lost the profits that he would otherwise have received over the remaining five years of the agreement. We therefore find that the total amount of profits lost by Mr. Huff is $2,500.00. Accordingly, we modify the trial court's judgment to reflect that Mr. Huff has sustained a total of $2,500.00 in damages.

As noted above, the parties' agreement provides that "[i]n the event that either party breaches this agreement, the non-breaching party shall be entitled to recover reasonable attorney's fees and costs incurred as a result of the breach." Mr. Huff testified at trial that he had incurred approximately $1,000.00 in attorney's fees as a result of the litigation between the parties. Mr. Simonton does not challenge the reasonableness of these fees. In light of our conclusion that Mr. Simonton breached the parties' lease agreement, we affirm the trial court's award of $1,000.00 in attorney's fees to Mr. Huff. Additionally, because this appeal occurred "as a result of the breach," we think that Mr. Huff is also entitled to an award of reasonable attorney's fees on appeal. We therefore remand the cause so that the trial court may determine the amount of attorney's fees that Mr. Huff incurred on appeal and enter an order assessing these fees to Mr. Simonton.

Based on the foregoing, we modify the trial court's ruling to reflect that Mr. Huff suffered a total of $2,500.00 rather than $3,000.00 in damages as a result of Mr. Simonton's breach

---

[5]It was agreed by the parties that any bulldozer work performed on Mr. Simonton's property would be at Mr. Huff's expense. Thus, even if Mr. Simonton had not breached the parties' agreement, Mr. Huff would not have been entitled to reimbursement for any expenses incurred by him in connection with this work. Accordingly, we calculate Mr. Huff's damages without regard to these expenses.

[6]We assume that this amount includes the $100.00 per year toward land taxes that Mr. Huff is required to pay under the parties' lease agreement.

of the parties' lease agreement.  Because Mr. Simonton is entitled to be reimbursed for the money that Mr. Huff received for the 1997 tobacco base, however, we offset these damages by $400.00.  Thus, Mr. Huff is awarded a total of $2,100.00 in damages.  Additionally, we affirm the trial court's ruling insofar as it awarded $1,000.00 in attorney fees to Mr. Huff.  Finally, we remand the cause to the trial court for a finding regarding the amount of attorney's fees incurred by Mr. Huff on appeal.  Once determined, the trial court is instructed to enter an order assessing this amount against Mr. Simonton.  Costs on appeal are taxed to Mr. Simonton, for which execution may issue if necessary.

_____
FARMER, J.


_____
HIGHERS, J.


_____
KOCH, J.