IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 24, 2017 Session

**JIMMY D. OGLE v. JULIE D. DUFF**

**Appeal from the General Sessions Court for Loudon County**
**No. 11-DV-332      Rex A. Dale, Judge**

———————————————

**No. E2016-01295-COA-R3-CV**

———————————————

Husband and Wife were married for approximately five and one-half years when Husband filed a complaint for divorce. Wife filed a counter-complaint for a divorce. The trial court granted the parties a divorce based on stipulated grounds, classified the parties' assets as separate or marital, and divided the marital estate. Husband appealed, arguing that the trial court erred in (1) divesting a revocable trust of all assets and refusing to enforce a valid postnuptial agreement associated with the revocable trust; (2) classifying the increase in value of the marital residence as marital property; (3) classifying the increase in value of Husband's premarital IRA as marital property; and (4) dividing the marital estate equally between the parties given the short duration of the marriage. We affirm as modified and deny Wife's request for an award of attorney fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed in Part, Modified in Part and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Brian E. Nichols, Loudon, Tennessee, for the appellant, Jimmy D. Ogle.

Mandy M. Hancock, Knoxville, Tennessee, for the appellee, Julie D. Duff.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Jimmy D. Ogle ("Husband") and Julie D. Duff ("Wife") were married on April 30, 2006. After five and one-half years, Husband filed for divorce on the grounds of inappropriate marital conduct and irreconcilable differences. Wife filed an answer and

counter-complaint for divorce based on the same grounds. At the time of trial, Husband was fifty-eight years old and Wife was forty-five years old. Wife worked for the Lenoir City Schools as a school teacher. Husband was a self-employed surveyor. This was the second marriage for both parties, and Wife had two minor children from her previous marriage.

Throughout the entirety of the marriage, the parties maintained separate accounts for their earnings. At trial, Wife testified that she deposited her earnings into her separate bank account. Husband identified six separate bank accounts he used during the marriage: (1) business account, (2) line of credit, (3) personal checking, (4) farm account, (5) Duff-Turner account, and (6) savings account. He testified that he usually deposited his earnings into the business account but occasionally deposited his earnings into the line of credit account. During the marriage, Wife wrote Husband several checks from her separate account to pay for utilities and other household expenses. After Husband received these checks, he would deposit the funds into one of his several accounts and often transferred the money between the various accounts.

At the time of the marriage, Husband held three individual retirement accounts ("IRAs"): (1) Fidelity account ("Fidelity Primary IRA") with a value of $118,412.39, (2) State Farm account ending in -3452 with a value of $3,373.75, and (3) State Farm account ending in -3833 with a value of $4,568.42. On August 22, 2012, Husband rolled the entire $4,011.60 balance of the State Farm account ending in -3452 into the Fidelity Primary IRA account. The Fidelity Primary IRA account was valued at $181,628.32 at the time of divorce.

Prior to the marriage, Husband owned a lakeside residence referred to as "the Tanasi Shores property." Early in the marriage, Husband purchased a 50-acre lot and a separate 5.5 acre lot in White County. On July 14, 2009, Husband created the Jimmy D. Ogle Revocable Trust ("Trust") as both settlor and trustee. Husband transferred the Tanasi Shores and White County properties into the Trust. Wife signed warranty deeds for these properties whereby she conveyed all marital interest she had in the properties to Husband as trustee of the Trust. In the Trust, Husband designated Wife and her children as beneficiaries of the Trust and named Wife as successor trustee. Contemporaneously with creation of the Trust, Husband executed a Last Will and Testament that directed that all other assets be placed in the Trust upon his death. After creation of the Trust, Husband, as trustee, purchased what is referred to as the Duff-Turner property. The trust agreement contains no provision regarding Wife's marital interest in property acquired following creation of the Trust.

On July 17, 2012, Husband filed a motion requesting that the trial court determine what effect the Trust had on the classification of marital property. Husband argued that the Trust was created pursuant to a postnuptial agreement between the parties. The trial court found there was not sufficient mutual assent between Husband and Wife to form an

enforceable postnuptial agreement.  The trial court, therefore, divested the Trust of titles to all properties transferred into the Trust and revested the titles in the names of the parties as they existed prior to creation of the Trust.  The trial court entered an order and judgment on November 3, 2014 granting the parties a divorce on stipulated grounds pursuant to Tenn. Code Ann. § 36-4-129[1] and reserved the issue of dividing the marital estate.  Following trial on the issue of property division, the trial court entered a final order on June 1, 2016 dividing the marital estate into equal shares between both parties.

Husband has now perfected this appeal and raises the following issues:  (1) whether the trial court erred in divesting the Trust of all assets and refusing to enforce the valid postnuptial agreement; (2) whether the trial court erred in classifying the increase in value of Husband's separate property on Lot 28 Tanasi Shores and the increase in value of the Fidelity Primary IRA as marital property; and (3) whether the trial court erred in dividing the marital estate into equal shares in light of the short duration of the marriage.

STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise.  TENN. R. APP. P. 13(d); *Church v. Church*, 346 S.W.3d 474, 481 (Tenn. Ct. App. 2010).  A trial court's conclusions of law are reviewed de novo with no presumption of correctness.  *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).  Because a trial court is in a position to observe a witness's demeanor as he or she testifies, a trial court is "accorded significant deference in resolving factual disputes when the credibility of the witnesses is of paramount importance." *Davis v. Davis*, 223 S.W.3d 233, 238 (Tenn. Ct. App. 2006) (citing *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)).  We will not re-evaluate a trial court's credibility determinations "'absent clear and convincing evidence to the contrary.'" *Id.* (quoting *Wells*, 9 S.W.3d at 783).

ANALYSIS

Jimmy D. Ogle Revocable Trust

Husband first takes issue with the trial court divesting the Trust of all assets and revesting titles to those assets in the names of the parties as they existed prior to creation

---

[1] Tennessee Code Annotated section 36-4-129 provides as follows:
>    (a) In all actions for divorce from the bonds of matrimony or legal separation the parties may stipulate as to grounds and/or defenses.
>    (b) The court may, upon stipulation to or proof of any ground of divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce or if a divorce is to be granted on the grounds of irreconcilable differences, declare the parties to be divorced, rather than awarding a divorce to either party alone.

of the Trust. Husband argues that the trust documents and accompanying warranty deeds constitute a valid postnuptial agreement and the trial court erred by refusing to evaluate these documents in light of the factors set forth in Tenn. Code Ann. § 36-3-501.[2]

Spouses or prospective spouses may enter into various types of agreements, including antenuptial agreements, reconciliation agreements, and postnuptial agreements. *Bratton v. Bratton*, 136 S.W.3d 595, 599 (Tenn. 2004). Prospective spouses execute antenuptial agreements "in contemplation of marriage," whereas reconciliation agreements and postnuptial agreements are entered into by spouses after marriage. *Id.* Spouses execute reconciliation agreements after a separation or the filing of a complaint for divorce. *See Atkins v. Atkins*, 105 S.W.3d 591, 594 (Tenn. Ct. App. 2002) (stating that "[a] reconciliation agreement . . . is executed *following a separation during a marriage*."); *Minor v. Minor*, 863 S.W.2d 51, 53 (Tenn. Ct. App. 1993) (involving a husband and wife who executed a reconciliation agreement after being separated and contemplating divorce); *Gilley v. Gilley*, 778 S.W.2d 862, 863 (Tenn. Ct. App. 1989) (involving a husband and wife who entered into a reconciliation agreement after the wife filed for divorce). Postnuptial agreements, on the other hand, "are entered into before marital problems arise." *Bratton*, 136 S.W.3d at 599. Because postnuptial agreements are similar in nature to reconciliation agreements and antenuptial agreements, courts generally apply the same principles in interpreting them. *In re Estate of Wiseman*, 889 S.W.2d 215, 217 (Tenn. Ct. App. 1994); *see also Bratton*, 136 S.W.3d at 600. "That is to say, [postnuptial agreements] should be interpreted and enforced as any other contract." *Bratton*, 136 S.W.3d at 600.

Contract interpretation presents a question of law. *Atkins*, 105 S.W.3d at 594. Consequently, we review the trial court's judgment de novo with no presumption of correctness. *Id.* A tenet of contract law is that contracts "can be express, implied, written, or oral[.]" *Thompson v. Hensley*, 136 S.W.3d 925, 929-30 (Tenn. Ct. App. 2003) (citing *Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 635 (Tenn. Ct. App. 2002)). Valid, enforceable contracts require a meeting of the minds, adequate consideration, and sufficient definiteness to be enforced. *Ace Design Grp., Inc. v. Greater Christ Temple Church, Inc.*, No. M2016-00089-COA-R3-CV, 2016 WL 7166408, at *7 (Tenn. Ct. App. Dec. 8, 2016). We have explained the meeting of the minds requirement as follows:

---

[2] Tennessee Code Annotated section 36-3-501 provides:

> Notwithstanding any other law to the contrary, except as provided in § 36-3-502, any antenuptial or prenuptial agreement entered into by spouses concerning property owned by either spouse before the marriage that is the subject of such agreement shall be binding upon any court having jurisdiction over such spouses and/or such agreement if such agreement is determined, in the discretion of such court, to have been entered into by such spouses freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse. The terms of such agreement shall be enforceable by all remedies available for enforcement of contract terms.

"Under general principles of contract law, a contract must result from a meeting of the minds of the parties in mutual assent to the terms." *Sweeten v. Trade Envelopes, Inc.*, 938 S.W.2d 383, 386 (Tenn. 1996) (citation omitted). "[T]he meeting of the minds . . . [is] to be determined . . . not alone from the words used, but also the situation, acts, and the conduct of the parties, and the attendant circumstances." [*Moody Realty Co., Inc. v.*] *Huestis*, 237 S.W.3d [666, 675 (Tenn. Ct. App. 2007)]. "Courts determine mutuality of assent by assessing the parties' manifestations according to an objective standard." *Id.* at 674.

*In re Estate of Josephson*, No. M2011-01792-COA-R3-CV, 2012 WL 3984613, at *2 (Tenn. Ct. App. Sept. 11, 2012). Thus, there must be mutual assent to a contract in order for the contracting parties to have a meeting of the minds. *See Ace Design Group, Inc.*, 2016 WL 7166408, at *7. If there is insufficient mutual assent, no contract exists. *Wofford v. M.J. Edwards & Sons Funeral Home, Inc.*, 490 S.W.3d 800, 810 (Tenn. Ct. App. 2015) (citing *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 528 (Tenn. 2012)).

The trial court determined that no valid postnuptial agreement existed in this case because the court found "there was insufficient mutual assent between the parties" to form an oral contract. In making its determination, the trial court considered the transcript of an oral conversation between the parties. At some time after the marriage, but before executing the trust documents, Husband and Wife discussed the creation of the Trust. Wife recorded this conversation and introduced a transcript of the recording as an exhibit at the hearing on Husband's motion. At the beginning of the transcript, the parties were discussing issues of distrust with each other and agreeing they intended to remain married. The discussion then turned to creation of the Trust to protect Husband's personal assets from potential lawsuits connected to his land survey business and to bequeath all Trust properties to Wife and her children in the event of Husband's death, if she survived him. The transcript does not indicate, however, that the parties discussed separation or divorce issues related to the division of the real properties transferred into the Trust.[3]

In addition to the transcript of the parties' conversation, both parties testified at the hearing on Husband's motion regarding the effect of the Trust on the classification of the property at issue. The record on appeal contains no transcript from the motion hearing. However, the record does contain a transcript from the trial on the issue of property division where both parties testified regarding the circumstances surrounding the creation of the Trust. Husband testified that the Trust was created "to protect [his] assets in case of a divorce." He further testified that he did not present Wife with a postnuptial agreement because he did not think "she would have signed a post-nuptial agreement just giving away any rights afterwards." Wife testified that she signed the trust agreement

---

[3] Several sections of the transcript indicate that the recording was inaudible.

and accompanying warranty deeds but did not know that she was conveying any marital interest she might have had in the real properties. Wife further testified that had she known she was conveying such interest, she would not have signed the documents. According to Wife, she signed the documents because she "took [Husband] at his word" and believed the Trust was created to protect Husband's personal assets from potential lawsuits from third parties. An examination of the transcript of the recorded conversation in conjunction with the testimony of the parties shows that the parties held different understandings about the purpose of the Trust. Thus, there was insufficient mutual assent for the parties to have a meeting of the minds. We conclude, therefore, that the trial court appropriately determined that there was not an enforceable oral postnuptial agreement.

Husband argues that the trust documents and accompanying warranty deeds constitute a written postnuptial agreement and the trial court erred by not considering these documents for what they state in clear and unambiguous terms and in accordance with Tenn. Code Ann. § 36-3-501. We disagree. Wife signed the warranty deeds for the Tanasi Shores and White County properties. The warranty deeds contain the following provision after the description of each parcel of real property: "JULIE R. DUFF-OGLE executes this Warranty Deed to convey all marital interest she may hold in the above described property." Wife testified that she was unaware that the warranty deeds contained this provision. As Husband correctly asserts, "[i]t is a bedrock principle of contract law that an individual who signs a contract is presumed to have read the contract and is bound by its contents." *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011). When a court interprets a contract, however, "the court must attempt to ascertain and give effect to the intention of the parties." *Simonton v. Huff*, 60 S.W.3d 820, 825 (Tenn. Ct. App. 2000). When a court attempts to determine the parties' intention, a court must:

> [E]xamine the language of the contract, giving each word its usual, natural, and ordinary meaning. Additionally, the court may consider the situation of the parties, the business to which the contract relates, the subject matter of the contract, *the circumstances surrounding the transaction*, and the construction placed on the contract by the parties in carrying out its terms.

*Id.* (citations omitted) (emphasis added). The parties must also have a meeting of the minds. *See Id.* at 825-26.

In order for an enforceable written postnuptial agreement to exist in the current case, Husband and Wife must have had a meeting of the minds regarding creation of the Trust as a postnuptial agreement. The trust documents neither reference a postnuptial agreement nor do they discuss divorce and separation issues pertaining to the division of the real properties transferred into the Trust. The trust agreement appoints Husband as the sole trustee and grants him the power to pay himself, or pay for his benefit, "as much of the net income and principal from the Trust as [he] shall request." Husband also has

the power, as trustee, to dispose of, by sale or other means, any properties transferred into the Trust. Thus, there is no guarantee that any assets would remain in the Trust until Husband's death because he could have, as the trial court found, "done away with all assets of the Trust and attempted to take possession of the Trust property or proceeds and transferred them to himself in his individual capacity." The record does not reflect that the parties discussed or considered this possibility before Husband created the Trust. In light of these facts and the parties' differing views of the purpose of the Trust discussed above, there was insufficient mutual assent to form a contract.

After a thorough examination of the record, we conclude that there was no meeting of the minds to form an enforceable oral or written postnuptial agreement and the trial court did not err by divesting the Trust of all assets and revesting titles in the names of the parties as they existed prior to Husband's creation of the Trust. Because the trust documents and warranty deeds fail to meet the requirements of an enforceable contract, we do not find it necessary to examine them in light of Tenn. Code Ann. § 36-3-501.

<u>Classification of the Marital Property</u>

We turn now to the trial court's classification of the increase in value of two assets as marital property. Husband asserts that the trial court erred by classifying the increase in value of the Lot 28 Tanasi Shores property and the increase in value of the Fidelity Primary IRA account as marital property.

Before dividing a marital estate, a trial court must identify all property interests at issue and classify each property interest as either separate or marital property. *Summer v. Summer*, 296 S.W.3d 57, 60 (Tenn. Ct. App. 2008). Classification of the property interests is an essential step because only marital property is subject to division in a divorce action. *Id.*; *see also Smith v. Smith*, 93 S.W.3d 871, 876 (Tenn. Ct. App. 2002). Tennessee Code Annotated section 36-4-121(b)(2) defines separate property, in pertinent part, as follows:

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) . . . ;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1).

- 7 -

Marital property, by contrast, is defined, in pertinent part, as follows:

> (A) [A]ll real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . .
>
> (B)(i) [I]ncome from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation;
>
> (ii) [T]he value of vested and unvested pension, vested and unvested stock option rights, retirement and other fringe benefit rights accrued as a result of employment during the marriage[.]

Tenn. Code Ann. § 36-4-121(b)(1).

Classification determinations present questions of fact. *Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007). Accordingly, a trial court's classification of property as either separate or marital will not be disturbed unless it is not supported by a preponderance of the evidence. *Id.*

A. Lot 28 Tanasi Shores

Husband purchased Lot 28 in the Tanasi Shores subdivision on November 6, 1996, before he married Wife. Thereafter, he built a home on the property. At the time of the marriage, there were no debts encumbering the property. The parties treated the property as their marital residence throughout the marriage. The trial court classified the marital residence as Husband's separate property and assigned it a value of $739,400 as of May 1, 2006.[4] The trial court classified the increase in value of the property, which the court valued at $125,250, as marital property because Wife made intangible contributions of labor and tangible financial contributions that "substantially contributed to the preservation and appreciation of the marital home." The trial court awarded the Tanasi Shores property to Husband and awarded Wife $94,106.29 as her equitable division share of the increase in value of the property.

---

[4] At trial, Husband's expert testified that the Tanasi Shores property was valued at $835,000 as of May 1, 2006. Wife presented tax assessment records valuing the property at $643,800 for 2005-2008. "When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values represented by all the relevant valuation evidence." *Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007).

If property classified as separate property increases in value during the marriage and "each party substantially contributed to its preservation and appreciation," the appreciation will be considered marital property. Tenn. Code Ann. § 36-4-121(b)(1)(B)(i); *Keyt v. Keyt*, 244 S.W.3d 321, 328-29 (Tenn. 2007). The Supreme Court has stated the following in regard to the contributions of a non-owner spouse:

> While these contributions may be either "direct" or "indirect," Tenn. Code Ann. § 36-4-121(b)(1)(D), they must satisfy two requirements. *McFarland v. McFarland*, No. M2005-01260-COA-R3-CV, 2007 WL 2254576, at *6 (Tenn. Ct. App. Aug. 6, 2007). First, the contributions must be "real and significant." *Id.*; *Brown* [*v. Brown*], 913 S.W.2d [163, 167 (Tenn. Ct. App. 1994)]. "Second, there must be some link between the spouses' contributions and the appreciation in the value of the separate property." *McFarland*, 2007 WL 2254576, at *6; *Langschmidt [v. Langschmidt],* 81 S.W.3d [741,746 (Tenn. 2003)]. Whether a spouse made a "substantial contribution" to the preservation and appreciation of separate property is a question of fact. *Sherrill v. Sherrill*, 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992).

*Keyt*, 244 S.W.3d at 329.

In the current case, Husband testified that improvements were made to the marital residence, such as adding walls and flooring in the basement and new flooring in the master bathroom. Wife testified that she gave Husband $55,635.92, the net proceeds she received from the sale of her premarital property, to pay for the improvements to the marital residence. Husband testified that Wife gave him the $55,635.92 as repayment for expenditures Husband made to Wife's premarital property for Wife's benefit prior to the sale thereof. The trial court, however, found "Husband's entire testimony concerning all monetary matters existing prior [to] and during the marriage to be highly suspect and lacking in credibility" and considered the $55,635.92 as a financial contribution made by Wife towards the preservation and appreciation of the marital home. The record contains no evidence, other than Husband's testimony, that an agreement existed between the parties for Wife to repay Husband for expenditures he made on her behalf pending sale of her premarital property. Furthermore, evidence in the record does not contradict the trial court's assessment of Husband's credibility.[5] We, therefore, defer to the trial court's assessment of Husband's credibility and will consider the $55,635.92 as Wife's financial

---

[5] In addition to evidence regarding the marital residence, Husband testified that he sold his separate real property located in Sevier County, Tennessee on August 18, 2008, and used the $35,268.41 in proceeds from this sale to fund the purchase of property for the Trust, referred to as the Duff-Turner property on December 2, 2010. However, bank account statements introduced at trial reveal that Husband had depleted these funds prior to purchasing the Duff-Turner property. Additionally, Husband claimed that Wife did not contribute to the purchase of a jet ski the parties acquired during the marriage. Wife introduced bank statements showing she paid $3,062.69 towards the jet ski.

- 9 -

contribution towards improvements to the marital home. In light of this financial contribution by Wife, we conclude that the evidence preponderates in favor of the trial court's finding that Wife substantially contributed to the preservation and appreciation of the marital residence. The trial court's classification of the appreciation in value of Lot 28 Tanasi Shores as marital property is affirmed.

### B. Fidelity Primary IRA

Husband created three IRAs prior to the marriage. One of these IRAs was the Fidelity Primary IRA. At the time of the marriage, the Fidelity Primary IRA contained $118,412.39. The account had a value of $181,628.30 at the time of trial. The trial court classified the entire appreciation value of $63,215.91 as marital property and awarded the full amount to Husband. On appeal, Husband argues that the trial court erred by classifying the increase in value of the Fidelity Primary IRA as marital property because no contributions were made to the IRA during the marriage and Wife did not substantially contribute to the preservation and appreciation of the Fidelity Primary IRA.

In support of his argument, Husband relies on the case *Langschmidt v. Langschmidt*, 81 S.W.3d 741 (Tenn. 2002). In *Langschmidt*, the husband had two premarital IRAs. *Id.* at 743. The husband made no contributions to the premarital IRAs during the marriage. *Id.* The trial court determined that, "according to the language of Tenn. Code Ann. § 36-4-121(b)(1)(B), any appreciation in value of the parties' IRAs during the marriage was marital property subject to equitable division." *Id.* at 744. On appeal, the Court of Appeals affirmed the trial court's classification of the appreciation in value of Husband's separate IRAs as marital property because the court concluded the husband's IRAs constituted retirement benefits within the meaning of Tenn. Code Ann. § 36-4-121(b)(1)(B). *Id.* The Supreme Court reversed the trial court's classification of the appreciation of the IRAs as marital property. *Id.* at 751. The Supreme Court began its examination of the issue by stating that "[r]etirement benefits accrued during the marriage clearly are marital property under Tennessee law." *Id.* at 749 (citing Tenn. Code Ann. § 36-4-121(b)(1)(B); *Gragg v. Gragg*, 12 S.W.3d 412 (Tenn. 2000); *Cohen v. Cohen*, 937 S.W.2d 823 (Tenn. 1996)). The Court determined, however, that the premarital IRAs at issue "were not retirement benefits under Tenn. Code Ann. § 36-4-121(b)(1)(B)" because they did not "represent deferred compensation during the marriage" due to the fact that the IRAs were funded with the husband's premarital earnings. *Id.* at 749. Because the husband owned these IRAs prior to the marriage and funded them with premarital assets, the court concluded that they were the husband's separate property. *Id.* at 750.

According to the Court in *Langschmidt*, both parties must have "'substantially contributed to [the IRAs'] preservation and appreciation'" in order to classify the IRAs' appreciation in value during the marriage as marital property. *Id.* (quoting Tenn. Code Ann. § 36-4-121(b)(1)(B), -121(b)(2)(C)). The Court required some nexus between the

wife's marital contributions and the appreciation in value of the husband's separate property in order to find that the wife made a substantial contribution. *Id.* The *Langschmidt* Court concluded that the appreciation in value of the IRAs was the husband's separate property because the record failed to show that the wife substantially contributed to the appreciation and preservation of the IRAs due to a lack of connection between her marital contributions and the appreciation. *Id.*

In the current case, as in *Langschmidt*, Husband owned the Fidelity Primary IRA prior to the marriage and funded it with premarital assets. Therefore, the Fidelity Primary IRA was Husband's separate property under Tenn. Code. Ann. § 36-4-121(b)(2)(A). Under the reasoning of *Langschmidt*, the appreciation in value of the Fidelity Primary IRA would become marital property if Wife substantially contributed to its preservation and appreciation. The record before us fails to support such a conclusion. Wife testified that she had no involvement with the management of the Fidelity Primary IRA. Examination of the record shows that Wife's involvement with the Fidelity Primary IRA was limited to Husband showing Wife the account statements to inform her of how the account's balance fluctuated due to market factors. The record contains no evidence establishing a nexus between Wife's marital contributions to household expenses and the appreciation in value of the Fidelity Primary IRA. Thus, we conclude Wife did not substantially contribute to the preservation and appreciation of Husband's separate property.

Although the appreciation in value of the Fidelity Primary IRA did not become marital property due to Wife's substantial contributions, it may have become marital property under the doctrine of commingling if Husband contributed marital funds to the account during the marriage. With regard to the doctrine of commingling, the *Langschmidt* Court adopted the following principles: "'[S]eparate property becomes martial property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur . . . .'" *Langschmidt*, 81 S.W.3d at 747 (quoting 2 Homer H. Clark, THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES § 16.2 at 185 (2d ed. 1987)).

In this case, the trial court classified the appreciation in value of the Fidelity Primary IRA as marital property because the court found that Husband contributed to the account during the marriage. The record, however, does not support such a conclusion. The record contains a check written by Husband on February 5, 2007 to Fidelity Investments for $5,000 and a corresponding deposit slip for the Fidelity Primary IRA. Husband wrote the check from his business account, which the trial court classified as marital property. Husband argued at trial, and on appeal, that the check was deposited into the Fidelity Primary IRA by mistake and the funds were re-routed to his Fidelity

SEP-IRA.[6]   The record also contains a check written by Husband from his business account for $5,000 on March 27, 2007 and a corresponding deposit slip for the Fidelity SEP-IRA.  Additionally, the record includes account statements for both the Fidelity Primary IRA and the SEP-IRA for the year 2007.  The account statement for the Fidelity Primary IRA shows that no contributions were made to the account for that year.  The account statement for the SEP-IRA, by contrast, shows that Husband contributed $10,000 to that account in 2007.  Thus, evidence in the record shows that the check written on February 7, 2007 was not a contribution to the Fidelity Primary IRA, but rather a contribution to the SEP-IRA.  Examination of the record shows that the only contribution Husband made to the Fidelity Primary IRA during the marriage was when he rolled his premarital State Farm IRA into the Fidelity Primary IRA.  The record contains no evidence that Husband contributed to the State Farm IRA prior to rolling it over into the Fidelity Primary IRA.  Thus, Husband did not commingle separate and marital funds with regard to the Fidelity Primary IRA.

We conclude that the trial court erred when it classified the appreciation in value of the Fidelity Primary IRA as marital property.  Accordingly, some adjustments must be made to the trial court's division of the marital estate.  The trial court awarded each party fifty percent of all marital property.  The trial court valued the appreciation of the marital residence at $125,250 and awarded Wife $94,106.29 as her equitable share of the appreciation.  She received more than fifty percent of the increase in value of the marital residence because the trial court awarded Husband the entire $63,215.91 increase in value of the Fidelity Primary IRA.  Therefore, Wife's interest in the appreciation of the Tanasi Shores property should be reduced to $62,625.00 (a fifty percent share of $125,250).

### Equitable Distribution of Marital Assets

Husband next takes issue with the trial court's division of the marital estate.  Husband argues that the trial court erred by dividing the marital estate equally between the parties because the trial court failed to give proper weight to what Husband considers the most important factors in this case:  the relatively short duration of the marriage and each spouse's contribution to the accumulation of assets during the marriage.

After a trial court has classified the parties' marital property, the court must equitably divide the marital assets.  *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *7 (Tenn. Ct. App. Sept. 1, 2006).  An equitable division does not require that each party receive an equal share of the marital estate or that both parties receive a share of each marital asset.  *Id.*  The factors enumerated in Tenn. Code Ann. § 36-4-121(c) guide a trial court in determining how to equitably divide marital property.  A trial court does not merely apply these factors in a mechanical fashion when dividing marital assets.  *Id.* at *8.  On the contrary, a trial court considers and weighs "the most

---

[6] Husband created the SEP-IRA during the marriage.  The trial court classified it as marital property.

relevant factors in light of the unique facts of the case." *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). A trial court, therefore, is granted considerable discretion in how it decides to equitably divide marital property. *Fox*, 2006 WL 2535407, at *8. We will defer to the trial court's decision concerning property division unless the decision is not consistent with the factors found in Tenn. Code Ann. § 36-4-121(c) or the evidence preponderates otherwise. *Brown*, 913 S.W.2d at 168.

One of the factors a trial court is permitted to consider is "[t]he duration of the marriage[.]" Tenn. Code Ann. § 36-4-121(c)(1). If a case involves a marriage of short duration, "it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place." *Batson*, 769 S.W.2d at 859. In such cases, it is important for a court to consider the contributions made by each spouse "to the accumulation of assets during the marriage[.]" *Id.* Additionally, a marriage of short duration diminishes the significance and value of the non-monetary contributions made by a spouse, and "claims by one spouse to another spouse's separate property are minimal at best." *Id.*

Husband argues that the trial court should have restored the parties to the position they were in prior to the marriage because this was a marriage of short duration. In support of his argument, Husband relies on the case *Lewis v. Frances*, No. M1998-00946-COA-R3-CV, 2001 WL 219662 (Tenn. Ct. App. Mar. 7, 2001). *Lewis* involved a short-term marriage between parties who entered the marriage with a large discrepancy in assets. *Lewis*, 2001 WL 219662, at *1. The wife filed a petition for divorce after twenty-three months of marriage. *Id.* She had a pre-marital estate that was approximately fifty times greater than that of the husband. *Id.* The parties filed separate tax returns and maintained separate financial accounts throughout the marriage. *Id.* Moreover, the parties never owned any property jointly. *Id.* The evidence established that an agreement existed between the parties to keep their assets segregated. *Id.* at *9. The husband argued that the wife's separate property had been converted into marital property under the doctrine of commingling and that he should have received an equal share of the marital estate. *Id.* at *1, *8. The *Lewis* court determined that no commingling occurred. *Id.* at *9. The court also determined that the husband made few contributions to the marriage, either monetary or non-monetary. *Id.* at *3. As a result, the *Lewis* court concluded "that the parties should, in large measure, be restored to their pre-marriage financial condition." *Id.* at *10.

Husband argues that the current case is similar to *Lewis* because it also involves a short-term marriage and a disparity in premarital assets. *See Stewart v. Stewart*, No. 02A01-9106-CH-119, 1992 WL 70927, at *4 (Tenn. Ct. App. Apr. 10, 1992) (implicitly finding that a marriage of almost nine years constituted a marriage of short duration). This case, however, is distinguishable from *Lewis*. At trial, Husband testified that he entered the marriage with approximately $1,300,000 in assets. Husband also provided a list of his premarital assets and their estimated values. Examination of the evidence

shows that Wife entered the marriage with approximately $100,000 in assets. This disparity in assets falls far short of the disparity found in *Lewis*. Moreover, Husband testified on cross-examination that he entered the marriage with a $33,000 debt he owed the Internal Revenue Service ("IRS"). Husband further testified that he satisfied this debt during the marriage. Our examination of the record shows that, when Husband listed his premarital assets and their values he failed to account for the debt owed to the IRS. In addition, the document Husband introduced at trial detailing his claimed premarital assets lists $95,000 in cash as a premarital asset. He testified that he inherited this money from his father and kept it in a safe located in the marital home. Husband provided no evidence of the existence of this $95,000 other than the list of premarital assets he prepared and his testimony, which the trial court did not find credible. Thus, the evidence in the record fails to substantiate Husband's claim that he entered the marriage with $1,300,000 in assets.

Husband further argues that the current case is similar to *Lewis* because the parties maintained separate financial accounts. In *Lewis*, "the uncontroverted evidence" established the existence of an agreement between the parties, both prior to and during the marriage, that their assets would remain separate. *Id.* at *9. In the current case, the parties dispute the reason they maintained separate financial accounts. At trial, Husband testified that the parties maintained separate accounts because they agreed that Wife's earnings would be her property and Husband's earnings would be his property. Wife, on the other hand, testified that the parties maintained separate accounts because Husband owed the IRS $33,000 at the time of the marriage. The trial court found Wife's testimony more credible than that of Husband. Thus, the trial court classified the parties' earnings during the marriage as marital property. In addition, the record in this case, unlike the record in *Lewis*, contains evidence that Husband commingled his separate funds with marital funds. During the marriage, Wife wrote Husband several checks from her separate account to assist in paying household bills. Husband testified that he would deposit these checks into one of his accounts and often transferred the money among his various accounts. Therefore, Husband, unlike the wife in *Lewis*, inextricably mingled separate funds he received from Wife with marital earnings.

The current case is further distinguishable from *Lewis* because each spouse made substantial monetary contributions to the marriage. In *Lewis*, the wife paid almost all of the household expenses. *Id.* at *3. The husband only contributed $1,090 toward household expenses. *Id.* The current case, however, contains evidence showing that both parties made substantial monetary contributions. At trial, the parties introduced tax returns for the years 2006 through 2011. Based on these tax returns, the trial court found that the total reported gross income of the parties from the time of their marriage through the date of their separation was as follows: $222,310 contributed by Wife and $366,103 contributed by Husband. The trial court found that Wife's claimed gross income constituted thirty-eight percent of the parties' combined income and Husband's claimed gross income constituted sixty-two percent. Husband argues that the trial court "assigned

- 14 -

an incorrect value to Husband's gross income for each year," which resulted in the trial court deciding "to assign each party an equal share of all marital property." For example, the trial court found that Husband's 2007 income was $99,411. According to Husband, his gross income for 2007 was $128,619.

Examination of the record shows that the trial court determined Husband's income based on the number Husband reported on his Schedule C tax form for each of the years. Line seven on the 2007 Schedule C tax form shows Husband's gross income was $128,619. However, this is Husband's income prior to deductions for additional business expenses. Part II of the 2007 Schedule C shows that Husband deducted $29,208 in additional business expenses. After calculating these deductions, Husband's income for 2007 was $99,411. Husband reported the post-deduction income on line twelve of the parties' 2007 joint tax return as his business income and paid taxes based on that claimed income rather than on the gross income. Examination of the tax returns shows that Husband claimed the post-deduction income for each year from 2006 through 2011. Wife argues that if Husband paid the additional business expenses he claimed on each Schedule C tax form, that money would not have been available for use by the parties for the marriage. We agree. Thus, we conclude that the trial court did not err in calculating Husband's claimed gross income based on the post-deduction value. The evidence preponderates in favor of a finding that Wife contributed thirty-eight percent to the parties' combined income and Husband contributed sixty-two percent.

The record also contains evidence showing that Wife made substantial financial contributions to household expenses. Credit card bills and bank account statements show that Wife paid for groceries, utilities, and medical and dental insurance for both parties. Additionally, she gave Husband the $55,635.92 net proceeds from the sale of her premarital residence to be used toward additions and improvements to the marital residence.

In light of Wife's substantial financial contributions during the marriage, we conclude that the trial court did not err in dividing all marital property in equal shares to both parties even though the marriage was of short duration.

Attorney Fees

Wife seeks an award of attorney fees and costs for this appeal. Litigants are generally required to pay their own attorney fees unless a statute or contract provision provides otherwise. *John Kohl & Co., P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998). An award of attorney fees is appropriate in a domestic relations case in the following circumstances: "(1) awards to economically disadvantaged spouses as additional spousal support in divorce proceedings; (2) awards to spouses who must return to court to enforce child support obligations; and (3) awards to spouses seeking to enforce an MDA when the MDA contains a provision for attorney's fees." *Elliott v. Elliott*, 149

- 15 -

S.W.3d 77, 88 (Tenn. Ct. App. 2004) (footnotes excluded). When an appellate court considers a request for appellate attorney fees, the court considers "the requesting party's ability to pay, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other relevant equitable factors." *Culbertson v. Culbertson*, 455 S.W.3d 107, 158 (Tenn. Ct. App. 2014) (citing *Moran v. Willensky*, 339 S.W.3d 651, 666 (Tenn. Ct. App. 2010)). A decision to award attorney fees on appeal is within the "'sound discretion'" of the appellate court. *Id.* (quoting *Moran*, 339 S.W.3d at 666). Wife has offered no legal argument regarding why she is entitled to an award of attorney fees for this appeal. Accordingly, we respectfully decline to award Wife her appellate attorney fees.

CONCLUSION

The judgment of the trial court is affirmed as modified herein. This case is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal shall be taxed to the appellant, Jimmy D. Ogle, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE